[No. 21094.  In Bank.—December 31, 1894.]

# THE PEOPLE, RESPONDENT, v. RICHARD WARD, APPELLANT.

CRIMINAL LAW—HOMICIDE—TRIAL—IMPANELING OF JURY—CONTINUANCE —PREPARATION OF ATTORNEY—DISCRETION.—Where an attorney appointed to defend a person upon a charge of murder, on the day when the cause was called for trial, asked for a continuance, upon the ground that he had recently come into the case as the attorney of the defendant and desired time to familiarize himself with the facts, but did not support the motion by an affidavit or other written evidence, and the motion for a continuance was denied upon the ground that the matter of impanelment of a jury needed no long preparation, and it appeared that defendant's counsel practically had a continuance of five days during the impanelment of the jury, and before the trial began, to prepare for the trial upon its merits, the discretion of the court in refusing a continuance before the jury was impaneled was not abused.

ID.—PLEA OF INSANITY—DRUNKENNESS—ACCEPTANCE OF JURORS.—The fact that counsel for defendant examined and accepted six jurors after questioning them as to their views of the plea of insanity in general, and only discovered that the claim of insanity on the part of defendant was based on the foundation of drunkenness, after such examination, does not prove error in refusing the continuance, where it appears that after full knowledge of the claim of insanity the counsel did not ask further to examine the six jurors.

ID.—EXCUSE OF JUROR AFTER ACCEPTANCE—WAIVER.—A juror may for cause be excused by the court after having been once accepted, and in criminal cases the court may for cause permit a peremptory challenge to be taken after the juror is sworn, and before the jury is completed, and the failure of counsel for defendant to show cause, or to request the privilege of further questioning or challenging jurors already accepted, is a waiver on behalf of the defendant of his right so to do.

ID.—TESTIMONY OF POLICE OFFICER—ORDER TO ARREST DEFENDANT.—The testimony of a police officer that he had telephoned to have the harbor police arrest the defendant, given as part of the narrative of the arresting officer as to the steps taken by him to arrest the defendant, is competent, and not objectionable on the ground that the directions for the arrest amounted to an expression of opinion that the defendant was guilty.

ID.—TRIAL—CONDUCT OF DISTRICT ATTORNEY—OFFER OF IMPROPER EVIDENCE—MOTIVE.—The district attorney is not guilty of misconduct prejudicial to defendant in asking the defendant on cross-examination if he had been in the prize ring, and withdrawing the question upon suggestion by the court that it was not proper cross-examination; nor in offering in evidence, in rebuttal to proof of the defendant's insanity, the record of an investigation as to the sanity of defendant, and a verdict to the jury pronouncing him sane, which was refused by the court, where the circumstances are such as to divest the offer of evidence of any apparent evil motive on the part of the district attorney.

ID.—CIRCUMSTANTIAL EVIDENCE—EXCLUSION OF RATIONAL HYPOTHESIS—
ERRONEOUS INSTRUCTION.—When circumstantial evidence is relied upon
to establish guilt it should be sufficient to exclude every other rational
hypothesis than guilt, but not to exclude every other hypothesis, and
an instruction that it must include every other hypothesis than the guilt
of the defendant is properly rejected.

ID.—INSTRUCTION CONTRARY TO FACT—DECLARATIONS OF DEFENDANT.—
. An instruction informing the jury that the evidence against the defend-
ant is purely and wholly circumstantial is properly refused, as contrary
to the fact, when there is other evidence consisting of the declarations
of the defendant tending to show that the defendant committed the
homicide.

ID.—INSANITY OF DEFENDANT—REASONABLE DOUBT—BURDEN OF PROOF.—
The doctrine of reasonable doubt does not apply to the question of
the insanity of the defendant; but the burden is on the defendant
to show by a preponderance of evidence that he was insane at the time
of the alleged homicide.

ID.—KNOWLEDGE OF NATURE OF ACT—"UNCONTROLLABLE IMPULSE."—The
doctrine that in some forms of insanity the patient or sufferer knows
the nature of his act fully, but at the same time he cannot prevent it
through paralysis of the will power, known as "uncontrollable im-
pulse," has no legal standing in this state.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.

The facts are stated in the opinion.

*Augustus Tilden,* for Appellant.

*Attorney General W. H. H. Hart,* and *Deputy Attorney General Charles H. Jackson,* for Respondent.

SEARLS, C.—Defendant was informed against upon a charge of the crime of murder, alleged to have been committed at the city and county of San Francisco.

Upon his plea of not guilty a trial was had, which resulted in a verdict of guilty of murder in the first degree, with punishment fixed by the jury at imprisonment for life.

The appeal is from judgment upon such verdict and from an order denying a motion for a new trial.

The cause was called for trial in the superior court on the second day of November, 1893, when Augustus Til-

den, Esq., counsel for defendant, asked for a continuance, upon the ground that he had recently come into the case as the attorney of defendant, and desired time to familiarize himself with the facts.

It thereupon appeared that the cause had been continued repeatedly for some three months; that upon a suggestion of the insanity of the defendant a jury had been impaneled and a trial had, which resulted in a verdict that defendant was sane.

Thereupon, and on the first day of November, 1893, James Smith, Esq., who had acted as attorney for defendant, retired from the case, and on the following day, to wit, November 2, 1893, said Augustus Tilden, Esq., was by the court appointed attorney for defendant.

The motion for a continuance was not supported by an affidavit or other written evidence so far as appears.

The motion for a continuance was denied, the court remarking in substance that the matter of impanelment of a jury needed no long preparation.

After six jurors had been examined and accepted, the panel being exhausted, additional jurors were ordered summoned and the cause was continued for four days, when the jury was completed and a further postponement of one day was had.

The refusal of the court to grant the continuance as prayed for is assigned as error. In view of the fact that no statement upon which the continuance was asked was verified it cannot be said that there was any abuse of that broad discretion which is lodged in trial courts, in refusing a continuance before the jury was impaneled.

Practically defendant's counsel had a continuance of five days within which to prepare for the trial of the cause upon its merits.

This was sufficient to remove the question from the realm of doubt, did any exist as to the propriety of the action of the court.

The contention that the plea of defendant was in-

sanity arising from the excessive use of intoxicating drinks; that his counsel examined and accepted the first six jurors, after questioning them as to their views of the plea of insanity in general, and only discovered that the claim of insanity on the part of the defendant was based upon the foundation of drunkenness, after the examination of said jurors, cannot prevail.

The record shows that counsel for defendant was aware of the particular phase or alleged cause of defendant's claim of insanity at the time of the killing, at the resumption of the trial after the adjournment of four days, and assuming, without legal proof, that he previously knew of the claim of insanity, but not its cause, the fact yet remains that he did not ask or in any way evince a desire to further examine the six jurors, indicates pretty clearly that the matter was not at the time regarded as important.

In civil cases it has been held that a juror may for cause be excused by the court after having been once accepted. (*Grady* v. *Early,* 18 Cal. 109; *Lawlor* v. *Linforth,* 72 Cal. 205.)

In criminal cases challenges, whether peremptory or for cause, "must be taken when the juror appears, and before he is sworn to try the cause, but the court may for cause permit it to be taken after the juror is sworn, and before the jury is completed." (Pen. Code, sec. 1068.)

The authority of the court to permit a challenge to a juror in a criminal case, after he is sworn, has been upheld. (*People* v. *Scoggins,* 37 Cal. 676.)

The failure to show cause or call to the attention of the court his desire to further question or to challenge the six jurors already accepted was, under the circumstances, a waiver on behalf of defendant of his right so to do.

It is further urged that the court erred in permitting John A. Maloney, a police officer, and one of the officers who arrested defendant, to testify on behalf of the prosecution, that he telephoned " to have the harbor police

arrest any of the racetrack boys that tried to cross the ferry, particularly Richard Ward."

The objection to this testimony is that it "amounted to an expression of an opinion by the witness that Ward was guilty."

If the theory of counsel is correct, then testimony of an officer that he arrested one charged with crime would show the formation and expression of an opinion as to his guilt, and be subject to a like objection.

To direct the arrest of a man is, or may be, as much an act as the actual arrest, and how either can be fairly viewed as an expression of opinion is not readily perceived.

The testimony in question was a part of the narrative of the arresting officer as to the steps taken by him to arrest the defendant, and, while it was of no importance except to make a connected whole in a statement by the officer, it could not have injured the defendant.

It is also urged that the district attorney was guilty of misconduct during the trial prejudicial to defendant. This alleged misconduct consisted: 1. In asking defendant on cross-examination, when a witness in his own behalf, if he had been in the prize ring; and 2. In offering in evidence in rebuttal the record of an investigation as to the sanity of defendant and the verdict of the jury pronouncing him sane.

The testimony was in the last case ruled out by the court, and in the former was withdrawn by the district attorney upon objection by defendant, and upon suggestion by the court that it was not proper cross-examination.

In this conduct no element of misconduct or oppression is perceived.

Defendant had testified in chief that on the evening of the homicide he and the deceased "had met in Ritter's saloon—had a friendly boxing match; I hit Kelly, (the deceased) in the nose and he took off his gloves." He then described meeting Kelly later at the racetrack stable where they slept, and that Kelly there hit

him, and tried to hit him, and he (the defendant) ran out in the alley, etc.

The prosecution had introduced evidence tending to show that at this very place and time defendant had beat Kelly to death with a pitchfork.

Under such circumstances it was quite natural for the district attorney to desire to show that defendant had been a prizefighter, as tending to show skill in self-defense against such an attack as he claimed had been made upon him, and hence that there was no need of his resorting to the use of a deadly weapon.

Concede that it was not admis.   evidence, and still the circumstances divest the offer of apparent evil motive. Like considerations apply to the offer of the record upon the trial of the question of the insanity of defendant.

Evidence had been taken at the trial tending to show that at the time of the homicide, and for some time prior thereto, defendant had been an habitual drunkard, and that his mind had been impaired thereby so as to render him irresponsible.

The proceedings touching his sanity, evidenced by the proffered record, related to the time when such proceeding was had, and not to the date of the homicide, and was taken under the Penal Code, sections 1367–69, to determine whether or not defendant was in such mental condition as to warrant his trial on his plea of "not guilty."

The record was evidence of defendant's mental condition at the date when it was made, but not at the date of the killing, and hence was not admissible.

There seems a disposition on the part of counsel for defendants in all criminal cases, since the decision in *People* v. *Wells,* 100 Cal. 459, to count upon the alleged misconduct of the prosecution as cause for reversal.

That was an extreme case, in which this court was of opinion the assistant district attorney had willfully and persistently offered incompetent evidence to the prejudice of defendant, well knowing its inadmissibility.

The animus of the prosecution there was so apparent, and its effect so pronounced, that the court deemed it but just to stamp with the seal of its disapprobation, not only for that case, but as a warning against like conduct in other cases, a course of proceeding militating against justice and the fair and orderly conduct which should characterize judicial proceedings in criminal cases.

It is only in extreme cases, of which this is not one, that the remedy there administered applies.

The attack in that case was not upon error by the prosecution, but upon willful error persisted in for an illegitimate purpose, followed by injustice to the prisoner.

The following instruction asked by defendant was refused, and such refusal is assigned as error: "I also instruct you that the evidence against defendant is purely and wholly circumstantial; such evidence must exclude every other hypothesis than the guilt of defendant; otherwise it is insufficient to convict. Therefore, in summing up the evidence, if you can find any explanation of the homicide inconsistent with defendant's guilt, you must acquit."

The instruction is marked ("Refused, Rational hypothesis, W. R. D., Judge").

From the note of the judge it may be inferred that the refusal to give the instruction was because the word *rational* did not precede the word *hypothesis*.

Where circumstantial evidence is relied upon to establish guilt it should be sufficient to exclude not *every other* hypothesis, but every other *rational hypothesis,* than guilt.

A hypothesis is a supposition, a proposition, or principle which is supposed or taken for granted, in order to draw a conclusion or inference for proof of the point in question. Something not proved, but assumed for the purpose of argument, or to account for a fact or an occurrence. (Webster's Dictionary.)

"An *hypothesis* being a mere supposition there are

no other limits to *hypotheses* than those of the human imagination. (Mill.)

In law the meaning of the word does not vary from its usual significance. (Black's Law Dictionary. See *People* v. *Cronin,* 34 Cal. 202; *People* v. *Hardisson,* 61 Cal. 378; *People* v. *Eckman,* 72 Cal. 582; *People* v. *Nelson,* 85 Cal. 430.)

2. There is another reason why the instruction was properly refused. It informed the jury "that the evidence against defendant is purely and wholly circumstantial."

Such was not the fact. The prosecution, after proving the death of John Kelly, that he was known as Red Kelly, that defendant and Kelly were together, and that the witness heard blows and exclamations, the prosecution called as a witness Albert Ivey, who met defendant just after the supposed killing, when the latter said: "I have done that damned red son of a bitch." The witness then said: "He said he referred to John Kelly, known as 'Red' at the racetrack; I asked him if he had killed him, and he replied: 'I don't know if he is dead, but I stuck this pitchfork in him.'" There was more testimony of like character, which clearly was not circumstantial, but direct, evidence.

The defendant, having introduced evidence tending to show that he was insane at the time of the killing, and the court, having instructed the jury in relation thereto, proceeded to instruct as follows:

"12. In the matter of insanity the doctrine of reasonable doubt does not apply. That is to say, gentlemen, the burden of proof of insanity is not on the people of the state of California, as it is with the other issues in this case, but it is on the defendant to show by a preponderance of evidence that he was insane at the time of the alleged homicide. If you believe that the preponderance of evidence is in favor of the people you must decide for the people on that issue, and if you believe that the preponderance of evidence is in favor

of the defendant you must decide for the defendant on that issue."

The contention of appellant is that the doctrine of reasonable doubt applies to the question of insanity, and hence that the instruction was erroneous.

We need not stop to discuss the question here, as it has been foreclosed against the contention of appellant by the previous rulings of this court. (See *People* v. *McNulty*, 93 Cal. 427; *People* v. *Travers*, 88 Cal. 233; *People* v. *Eubanks*, 86 Cal. 295; *People* v. *Kernaghan*, 72 Cal. 609; *People* v. *Messersmith*, 61 Cal. 246; *People* v. *Wilson*, 49 Cal. 13; *People* v. *McDonell*, 47 Cal. 134; *People* v. *Coffman*, 24 Cal. 231; *People* v. *Myers*, 20 Cal. 518.)

The doctrine of these cases is, that in criminal cases the defendant is presumed to be sane until the contrary is made to appear; and his insanity, if relied upon as a defense, must be established affirmatively by a preponderance of proof as in civil cases; and this being so, the question of reasonable doubt, either in favor of or against the defendant as to his sanity or insanity, has no application to such issue.

The instruction upon the question of reasonable doubt upon the whole case was full and complete, and in substantially the language of Shaw, C. J., in *Commonwealth* v. *Webster*, 5 Cush. 320; 52 Am. Dec. 711.

The court, in instructing the jury upon the subject of insanity, informed them " that the doctrine that in some forms of insanity the patient or sufferer knows the nature of his act fully, but at the same time cannot prevent it through paralysis of the will power," and which is known as " uncontrollable impulse," has no legal standing in this state, etc.

The instructions on the subject of insanity, taken together, are in consonance with the doctrine enunciated in *People* v. *Hoin*, 62 Cal. 120; 45 Am. Rep. 651, and are not objectionable.

The modifications of defendant's instructions Nos. 1, 2, 3, 4, were merely verbal, and in no sense added to or detracted from the principles involved in them as asked.

A careful study of the whole case leads to the conclusion that the defendant was fairly tried and properly convicted.

The judgment and order appealed from should be affirmed.

TEMPLE, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

HARRISON, J.,      DE HAVEN, J.,
GAROUTTE, J.,      McFARLAND, J.,
FITZGERALD, J.,    VAN FLEET, J.