[Crim. No. 1820.   Second Appellate District, Division Two.—July 15, 1929.]

THE PEOPLE, Respondent, v. A. J. YOUNG, Appellant.

Troy Pace for Appellant.

U. S. Webb, Attorney-General, and W. H. Augustine for Respondent.

CRAIG, J.—The appellant was charged jointly with two others with having committed grand theft, forgery and conspiracy to cheat and defraud, in the county of Los Angeles. Having been convicted by a jury of these offenses, he appeals. Since a serious question is raised as to the regularity of the impanelment of the jury, which, if tenable, renders all subsequent proceedings in the trial court nugatory and the judgments invalid, we proceed to consider it at once. The facts in this respect are not controverted by the respondent.

It appears that twelve regular jurors and two alternates were examined and accepted, and the jury were sworn during the forenoon of March 25, 1929. The respective counsel waived reading of the information, and the trial judge stated the case to the jury, whereupon the court recessed until 2 o'clock P. M. of the same day. Upon their return at that time the court remarked that Lester B. Zillgitt, one of the regular jurors, had communicated the fact that he had learned that one Herbert Smith, a witness for the defendant Young, was a member of the same club as himself, and was a social friend of his, but that he had not previously known that Smith was to be a witness in the case. The juror stated that he did not believe their friendly relations would alter his attitude, but that "those things always have a bearing." Following discussion among counsel, the deputy district attorney asked permission to exercise a peremptory challenge, "even though the juror had been sworn, if there is no objection." Counsel for the defendants objected, stating that Smith was but a character witness and knew nothing about the case. The court overruled their objections, allowed the challenge, and excused the juror. Thereupon appellant's counsel announced: "Your honor, at this time, before the jury is called, I desire to enter a special plea upon behalf of the defendants Young and Smith, and that is a plea of former jeopardy today when the jury was impaneled and sworn and the statement of the court was made to the jury; jeopardy attached at this time." Objection on behalf of the people to such plea was sustained, and Mrs. Dolly B. Cates, who was not an alternate, was called from the venire, impaneled and sworn. It is strenuously insisted by appellant that

upon the impanelment of the jury and statement of the case he was placed in jeopardy, and that the withdrawal of an accepted and sworn juror in the afternoon immediately prior to calling of a witness was unauthorized. The respondent contends that the "discovery of the fact of his unfitness to sit as a juror was an unexpected and unusual happening," bringing the case within the provisions of section 1139 of the Penal Code, authorizing the discharge of the *jury* after retirement of the illness of one, or other accident or cause, prevents their being kept in deliberation, and within those of section 1141, which provides that where a jury is discharged or prevented from giving a verdict by reason of accident or other cause, the case may be tried again.

Section 1068 of the Penal Code provides that the challenge "must be taken when the juror appears, and before he is sworn to try the cause; but the court may *for cause* permit it to be taken after the juror is sworn, and *before the jury is completed.*" We are cited to no authority, nor have we been able to find any, which can be said to have sanctioned the allowance of a peremptory challenge to a juror by the prosecution after the acceptance by both parties, completion and swearing, of the jury, and the reading of the indictment or statement of the case. In any event, it has repeatedly been held in this state that under this section a juror may be challenged after being sworn and before the jury is completed only for cause. (*People* v. *Reynolds,* 16 Cal. 128; *People* v. *Bemmerly,* 87 Cal. 117 [25 Pac. 266]; *People* v. *Ward,* 105 Cal. 335 [38 Pac. 945]; *People* v. *Durrant,* 116 Cal. 179 [48 Pac. 75]; *People* v. *Boren,* 139 Cal. 210 [72 Pac. 899]; *People* v. *Schmitz,* 7 Cal. App. 330 [15 L. R. A. (N. S.) 717, 94 Pac. 407, 419].) It occurs to us that the error in this instance is not and cannot be sufficiently mitigated by the application of the rule that a judgment will not be disturbed if the rights of the defendant do not appear to have been substantially infringed, nor by the provisions of section 4½, article VI, of the Constitution. The peremptory challenge was not only allowed the people after the jury was completed and they had retired for the noon recess following a statement of the issues as joined, but over the objection of the defendant. Zillgitt had been asked by the court at this stage of

the proceedings, after previous examination and acceptance, with eleven other regular jurors and two alternates: "Would the fact that you and Mr. Herbert Smith are quite friendly, on quite friendly relations, make any difference with your attitude in the case?" To which he replied: "I don't believe it would." As has been said, both the common-law and statutory modes of selecting jurors are supported by "the principle, so often repeated, that the right of challenge is a right of rejection, not of choice." (*Tierney* v. *United States*, 280 Fed. 322.) The condition of this juror's mind was not such as to entitle the People to reject him for cause at any time, and the limitation of the time for interposing of challenges as before the completion of the jury has been recognized by decisions of this state in construing section 1068 of the Penal Code. (*People* v. *Boren, supra; People* v. *Goldenson,* 76 Cal. 328, 347 [19 Pac. 161]; *People* v. *Duncan,* 8 Cal. App. 186 [96 Pac. 414].) In the case last cited challenges were held properly denied the defendant, as to jurors who had formed opinions that a murder had been committed, one of whom admitted that he was prejudiced in like cases as to the existence of a conspiracy, but each signified that he could fairly decide upon the evidence presented. The rule is most aptly laid down in *People* v. *Schmitz, supra,* wherein numerous decisions of this and other jurisdictions are reviewed, in the following language:

"Section 1068 of the Penal Code provides that a challenge must be taken 'when the juror appears and before he is sworn to try the cause; but the court may for cause permit it to be taken after the juror is sworn and before the jury is completed.' It appears evident that the court could not under the section permit a challenge except 'for cause,' and the cause must have been based on some fact and founded upon a proper showing of facts, upon which the court could have exercised its discretion. If the court, after a juror has been sworn to try the case, can permit him to be challenged without cause, the words 'for cause' should be stricken from the statute. The Code evidently intended that after a juror has been examined, passed, and has taken a solemn oath to try the case he could not then except for a valid reason, be, at the caprice of the parties, discharged. He became a juror in that case, and thus a part of the machinery of the court. He became a part of the tribunal

for the purpose of determining the guilt or innocence of the defendant. That tribunal was changed without the consent of the defendant, and in the interest of his adversary. *Greer* v. *Norvill*, 3 Hill (S. C.), 262. Defendant had the right to rely upon the fact that the juror had been sworn in exercising his right to his own peremptory challenges. The mandate of the statute appears plain and should have been followed. We know of no case, and none has been called to our attention, in which such challenge was upheld."

But three jurors had there been examined, passed and sworn to try the case when the challenges in question were allowed as to two of them. Regarding the dismissal of another juror who had read in the paper that he was related to the defendant, and asked to be excused, though he did not know whether the relationship might be "fourth or fifth cousins or something through marriage," it was further said:

"The court, on this showing and nothing more, sustained the challenge to the juror under defendant's objection. The evidence entirely failed to show any relationship by consanguinity or affinity within the fourth degree. In fact it did not show any relationship of the juror to defendant in any degree or in any way. The judge, in ruling upon the challenge, said: 'I think any relationship, no matter how remote, ought to keep a person off the jury.' It was not for the court to set up its judgment against the statute as to the qualifications of a juror. The juror did not know defendant, and did not know of any relationship. He only knew that he had seen something about it in the papers. If this juror could thus be excused without cause, there is no reason why the same thing could not have been repeated as often as the district attorney might have requested it. It is plain that the effect of the ruling was to give the prosecution an additional peremptory challenge. The defendant exhausted his peremptory challenges, and it must be presumed that the removal of Jurors Harris and Bray without cause, after they had been sworn, was injurious to his rights. Defendant had the right to have the jury impaneled according to the law of the state under which he was being tried. The prosecution did not have the right to arbitrarily dismiss qualified jurors unless it could be done as provided by the Code. The views here

expressed are ably supported in an exhaustive opinion written by Mr. Justice Henshaw in *People* v. *Helm*, 152 Cal. 532 [93 Pac. 99]. The case was reversed upon the rulings of the trial judge refusing to sustain defendant's challenges to certain jurors on the ground of implied bias. The court said that, if the defendant had been compelled to exhaust his peremptory challenges to relieve himself of jurors who should have been excused by the court for cause, 'the rulings of the court upon such jurors become a most important matter of review.'

"The Code provisions in regard to the impanelment of jurors and their qualifications have in view the right of the defendant to a fair and impartial jury, and one not picked and selected by the prosecution. . . . "

The foregoing was reaffirmed in *People* v. *Ruef*, 14 Cal. App. 594 [114 Pac. 61], wherein the Supreme Court, all justices concurring, denied a hearing after decision by the District Court of Appeals.

The conclusion is unavoidable that error of a serious nature and affecting the substantial rights of the defendant was committed by the sustaining of the peremptory challenge.

██ It is equally clear that the jury having been completed and regularly impaneled and sworn before the peremptory challenge was allowed, this appealing defendant was in jeopardy. Jeopardy signifies the danger of conviction and punishment which one charged with a criminal offense incurs when duly put upon trial before a court of competent jurisdiction, and a jury has been charged with his deliverance. (*People* v. *Tong*, 155 Cal. 579 [132 Am. St. Rep. 110, 24 L. R. A. (N. S.) 481, 102 Pac. 263].) ██ A jury stands so charged when its members have been impaneled and sworn. (*People* v. *Hawkins*, 127 Cal. 372 [59 Pac. 697].) His jeopardy is real and he cannot be again subjected to jeopardy unless the jury be discharged without rendering a verdict, by his consent, or upon some legal necessity resulting from physical causes beyond the control of the court. (*People* v. *Hunckeler*, 48 Cal. 334; *Ex parte McLaughlin*, 41 Cal. 211 [10 Am. Dec. 272].) If deprived of a verdict because an error of law would result in a mistrial, except as provided by statute therefor, the discharge is equivalent to an acquittal and is a bar to a subsequent

trial. (*People* v. *Tong, supra.*) ▮ A defendant having been placed in jeopardy, it is a bar to another indictment or information for the same offense or for an attempt to commit it, or for an offense necessarily included therein, of which he might have been convicted under the first indictment or information. (*People* v. *Zeigler,* 135 Cal. 462 [56 L. R. A. 882, 67 Pac. 754].)

The judgments are reversed and the appellant is ordered discharged.

Thompson (Ira F.), J., concurred.

Works, P. J., being absent, did not participate in this decision.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 30, 1929, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 12, 1929.

Richards, J., Curtis, J., and Waste, C. J., dissented.